The CLARK GRAVE VAULT COMPANY
v.
The UNITED STATES.
No. 308–61.

United States Court of Claims.
Jan. 20, 1967.

---

John P. Tracey, Washington, D. C., for plaintiff; F. Cleveland Hedrick, Jr., Washington, D. C., attorney of record; Fred S. Gilbert, Jr., John D. Lane, and Hedrick & Lane, Washington, D. C., of counsel.

Alfred H. O. Boudreau, Jr., Washington, D. C., with whom was Acting Asst. Atty. Gen., J. William Doolittle, for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, and COLLINS, Judges.

OPINION

COLLINS, Judge.

This case, presented on an assignment of errors, is a sequel to Natus Corp. v. United States, Ct.Cl., 371 F.2d 450, this day decided. The operative facts are in all respects similar; hence, a full factual recitation is unnecessary. In this suit, plaintiff asserts that its contract— which called for the production of 4,-000,000 square feet of steel landing mat identical to that involved in *Natus,* supra —was impossible to perform because of defective specifications. As in that case, plaintiff here interpreted the contract drawing as calling for a pierce-before-forming sequence. Of the two methods

by which a pierce-before-forming operation might have been accomplished, plaintiff chose what in theory was thought to be the more economical, i. e., a rolling machine. The unsuitability of the method chosen—when confined strictly to a pierce-before-forming operation—is the basis upon which plaintiff rests its claim of impossibility.

As was pointed out in *Natus,* we take no issue with the contractor's view that the contract drawing embodied a standardized version of an angle made through a pierce-before-forming operation. Likewise, in *Natus,* we acknowledged that, where a drawing thus depicts a given production method or production sequence, i. e., piercing-before-forming, it is reasonable for the contractor to assume that such a method could successfully be employed. Therefore, in *Natus,* we expressed the opinion that a claim of legal impossibility could be sustained if the method of production which the drawing invited was found to be beyond the state of the art or could only be achieved through methods which were commercially impracticable. The claim in *Natus* was rejected because the record failed to disclose any basis for a *legal* finding of *impracticability,* i. e., no proof was introduced to show that the alternative methods of manufacture would be so costly as to put them beyond the realm of practicability.

■ In this case, plaintiff has sought to sustain its claim of legal impossibility on the ground that the rolling-machine method of operation could not be utilized in high-speed production. No attempt was made to show that this was the *only* method of manufacture or that other methods, while perhaps feasible, would have been so costly as to bespeak commercial senselessness. Thus, plaintiff's proof suffices only to show that what it took to be the more logical approach proved to be inadequate. It does *not* establish legal impossibility. We know of no decision which would permit us to hold that a contractor is entitled to a change order merely because performance under *optimum conditions* becomes impossible.

■■ The contract drawing involved here did depict a pierce-before-forming operation—hence the Government can be held to have impliedly warranted the adequacy of the method shown. North American Philips Co. v. United States, 358 F.2d 980, 175 Ct.Cl. 71 (1966). But the manner or method by which such a pierce-before-forming sequence was to be implemented was left entirely to the contractor's own discretion and expertise. And if, as here, it elects to proceed by using a means of production that proves to be inadequate, recourse against the Government cannot be had. The judgment relied upon was its own.

The record in this case contains uncontradicted evidence supporting the feasibility of using press brakes to achieve a successful pierce-before-forming operation. Having no other facts before us, we can only conclude that the existence of known alternative methods of manufacture—acknowledged to be feasible and not otherwise appearing as economically prohibitive—must spell the rejection of plaintiff's claim for failure of proof.

■■ Subjectively appraised, i. e., in terms of plaintiff's own experience, the contract drawing was inadequate; objectively evaluated, it was not. We therefore conclude that plaintiff's petition must be dismissed.[1]

---

1. Our opinion here takes into consideration defendant's contention that the present action cannot be entertained because of lack of timeliness. This position—introduced by way of a motion filed on December 9, 1966—seeks to oust this court of jurisdiction on the theory that plaintiff's cause of action accrued as of the final delivery date under the contract; i. e., October 1954, hence making the present appeal untimely. As pointed out in Nager Electric Co. v. United States, 368 F.2d 847, 177 Ct.Cl. —— (Oct. 1966), we view the termination of mandatory administrative proceedings as establishing the accrual point for purposes of measuring the timeliness of an action in this court. Defendant's motion to dismiss because of lack of timeliness has therefore been rejected.

**462**

### CONCLUSION OF LAW

■ ■ To sustain its claim of impossibility of performance, it was incumbent upon plaintiff to show that production in accordance with the contract drawing was either beyond the state of the art or else could only be achieved through expenditures so extreme in nature as to warrant a conclusion of commercial impracticability. Plaintiff's failure to establish record evidence as to these essential considerations requires our rejection of its claim, and plaintiff's petition is dismissed.

We have also, as indicated, rejected defendant's contention that consideration of the present claim was precluded because of a lack of timeliness.

DAVIS, Judge, concurs in the opinion with the reservation set forth in his concurring statement in Natus Corp. v. United States, Ct.Cl., 371 F.2d 450, decided today.